ADA BROWN, JUSTICE, dissenting.
I agree with the majority's resolution of the liability issues in this case. I write separately because I respectfully disagree with its resolution of the damages issue. Carl Rogers's care, maintenance, support, advice, and counsel to his wife and daughters had a pecuniary or economic value, and the loss of those services was a pecuniary loss. The jurors were entitled to use their knowledge and experience to estimate the value of his services without proof of their value or proof appellees were or would be out a specific sum of money due to the loss of those services. I believe the evidence is legally and factually sufficient to support the jury's determination of appellees' pecuniary loss and that the trial court was entitled to use that amount when calculating economic damages under the exemplary damages cap. Therefore, I would affirm the trial court's judgment.
Section 41.008 of the civil practice and remedies code limits the amount of exemplary damages a plaintiff can recover as follows:
(b) Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:
(1)(A) two times the amount of economic damages; plus
(B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or
(2) $200,000.
TEX. CIV. PRAC. & REM. CODE ANN . § 41.008(b) (West 2015). Chapter 41 defines "economic damages" as compensatory damages intended to compensate a claimant for actual economic or pecuniary loss. Id. § 41.001(4). "Noneconomic damages" means damages awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages. Id. § 41.001(12).
The jury was asked to determine each appellee's past and future pecuniary loss. The charge defined "pecuniary loss" as "the loss of care, maintenance, support, advice, counsel, and reasonable contributions of a pecuniary (monetary) value, excluding loss of inheritance that ... [appellees], *662 in reasonable probability, would have received from Carl Rogers had he lived." The jury found that appellees' total pecuniary loss was $900,000.
"Pecuniary loss" means "A loss of money or something having monetary value." Loss ? pecuniary loss, BLACK'S LAW DICTIONARY (10th ed. 2014). In the wrongful-death context, pecuniary loss has long included the value of the deceased's advice and counsel to his surviving family members. See Moore v. Lillebo , 722 S.W.2d 683, 687 (Tex. 1986) ; St. Louis Sw. Ry. of Tex. v. Anderson , 206 S.W. 696, 701 (Tex. Civ. App.-Dallas 1918, writ ref'd) ; Badall v. Durgapersad , 454 S.W.3d 626, 637 (Tex. App.-Houston [1st Dist.] 2014, pet. denied). Loss of advice and counsel is not included in chapter 41's laundry list of noneconomic damages. CIV. PRAC. & REM. CODE § 41.001(12). "A parent's services to a child, such as nurture, care, education, and guidance, have a monetary value in addition to any financial contributions." Badall , 454 S.W.3d at 638 (quoting Samco Props., Inc. v. Cheatham , 977 S.W.2d 469, 480 (Tex. App.-Houston [14th Dist.] 1998, pet. denied) ); John Deere Co. v. May , 773 S.W.2d 369, 379 (Tex. App.-Waco 1989, writ denied). "Pecuniary loss in a wrongful-death case is not subject to precise mathematical calculation, and the jury is given significant discretion in determining this element of damages." Id. at 637 (quoting Christus Health v. Dorriety , 345 S.W.3d 104, 113 (Tex. App.-Houston [14th Dist.] 2011, pet. denied) ). Pecuniary losses may be recovered even in the absence of specific evidence of the amount of contributions being made by the deceased before his death or that he would have continued to make in the future. Id. Thus, while the amount of damages awarded must be supported by evidence, a jury determining pecuniary loss may look beyond evidence of calculable financial contributions. Id. Jurors may apply their knowledge and experience to estimate the value of services, such as household services, rendered by a decedent without proof of their value. Id. at 638.
Courtney, Carl's younger daughter, was thirty-four at the time of trial. She is married and has one child, who was born about three months after Carl died. She is employed as a nurse in Dallas. She testified about the counsel and advice her father gave her. He was a calming force and the one she went to talk to when she had issues. She would have loved to hear his childcare advice, as well as advice on fixing things around the house, buying cars, and bad days at work. She testified that her father was smart with money. He advised her on saving money. On cross-examination, counsel for Goodyear asked if she had any actual monetary loss related to the loss of advice or counsel from her father. She testified that "those things are priceless." When asked if she had any "hard numbers or actual financial loss," she stated she did not know how to answer that question. She had not hired anyone to replace the advice she received from her father.
Natalie, Carl's older daughter, was thirty-eight at the time of trial. She lived in Tyler and worked for a title company. Natalie gave examples of times she sought advice and counsel from her father. When she got her first full-time job, he advised her about insurance and investing in a 401k. Just before his death, he had talked over the benefits of a new job with her and advised her to take the job. Shortly after her father's death, she stopped renting a place to live and purchased a house. Natalie wished she had the opportunity to talk to her father about the purchase. She testified that he "knew so much about everything." On cross-examination, Goodyear's attorney asked Natalie if she incurred any expenses due to the loss of advice or counsel *663 from her father when she purchased her home. Natalie testified that she did not know "how you put a price on anything we lost from him." When asked if she had to pay someone to give her advice and counsel about her home purchase, Natalie said she did not hire anyone. She also testified she could not put a number on expenses or losses due to the loss of employment advice or financial advice her father used to give her.
Even though Carl's daughters could not specify the amount of their economic loss, the jurors were entitled to estimate the value of Carl's services based on their knowledge and experience. There was evidence Carl provided his daughters with life advice on a variety of topics. The jury had significant discretion to determine this element of damages. I would defer to the jury's determination that each daughter had past pecuniary loss of $50,000 and future pecuniary loss of $100,000. See id. at 637-39 (upholding jury's award to adult daughters for pecuniary losses resulting from father's death).
Turning to Vicki Rogers's economic damages, Goodyear acknowledges that Vicki had some economic loss, but only because she can specify the amount of money she spent to hire someone to do the yard work Carl used to do. The majority agrees, limiting Vicki's pecuniary loss to the value of the yard work and $170,000 in undisputed medical expenses. But the evidence showed Vicki lost much more in the way of Carl's care, maintenance, support, advice, and counsel than just the loss of someone to do the yard work. She testified about their long relationship and marriage. When asked about the times she sought Carl's advice and counsel, Vicki testified that Carl was a handyman. He liked to fix things and build things. If something needed to be fixed around the house, like an appliance, he would fix it. If the house needed painting, Carl would paint it. He put up wallpaper and wood paneling. He might have changed the brakes on her car once or twice. He always did the yard work and now Vicki paid $50-$60 every time she needed yard work done. She also needed a lot done around the house. For example, the house needed new paint and new floors, but she had not done any of it. Carl would have been able to help out with some of the work. She had gotten an estimate of $6,000 for new windows. Carl would have probably tried to replace them himself. In addition, Vicki testified that she has had a hard time making decisions because Carl was "really great help with that." She and Carl talked about how to spend their money; they did not buy anything unless they "thoroughly talked it over." Vicki's loss of Carl's care, maintenance, support, advice, and counsel is considered a pecuniary loss. Her pecuniary loss was not just in the loss of someone to do household maintenance and chores, but also included the value of her husband's advice and counsel about life's decisions. Again, the jurors were entitled to apply their knowledge and experience to estimate the monetary value of his services without proof of their value. The jury awarded Vicki a total of $600,000 for past and future pecuniary loss. I would defer to the jury's determination regarding the amount of Vicki's pecuniary loss. See id. at 638-39.
The majority relies on language in the supreme court's opinion in Waste Management of Texas, Inc. v. Texas Disposal Systems Landfill, Inc. , also cited by Goodyear, to support its position. 434 S.W.3d 142 (Tex. 2014). But that case involved a business dispute. One corporation sued another corporation for defamation and prevailed. The supreme court considered whether the damages awarded for injury to the plaintiff corporation's reputation were economic or noneconomic damages, *664 as the categorization impacted the amount of allowable punitive damages. Id. at 151. The court held that reputation damages were noneconomic damages.[1] Id. at 156. I do not think Waste Management compels a conclusion in this wrongful-death case that the damages awarded to appellees for loss of Carl's advice and counsel were noneconomic.
The majority also relies on the Amarillo Court of Appeals' decision in Excel Corporation v. McDonald , 223 S.W.3d 506 (Tex. App.-Amarillo 2006, pet. denied). It is factually distinguishable. The case involved the wrongful death of a nineteen-year-old college student who lived with his mother. Id. at 507-08. The son had a part-time job while attending school, made some financial contributions to his mother, and also performed domestic tasks. There was a one-year period between the son's death and the jury verdict. The jury determined the mother's past pecuniary loss was $150,000. The defendant asserted the evidence was legally insufficient to support that finding.[2] Id. at 508. The court agreed there was evidence of some pecuniary loss, but it reversed the judgment and remanded for new trial because no reasonable view of the evidence supported placing a value of $150,000 on the young son's services to his mother in that one year. Id.
By contrast, this case involves the wrongful death of a sixty-year-old man and the pecuniary loss to his wife and adult daughters for the twenty years he was expected to live had he not contracted mesothelioma. Further, in Excel , the Amarillo court did not discuss the mother's loss of her son's advice and counsel, presumably because there was no evidence of that type of pecuniary loss. Consideration of the mother's pecuniary loss was limited to financial contributions and household chores.
In addition to the factual differences between this case and Excel , I do not read Excel as the majority does to require evidence of actual quantifiable monetary loss. The court considered the amount of the son's calculable financial contributions to his mother ($15,000 per year), but also considered the value of his household services. See ids="8312185" index="82" url="https://cite.case.law/sw3d/223/506/">id. at 509-10. Although the court of appeals stated, "[N]o evidence supports the jury's finding that [the mother] suffered direct economic losses in the past of $150,000," it also recognized that the son's household services had a pecuniary value and that jurors could apply their knowledge and experience to estimate the value of those services. See ids="8312185" index="83" url="https://cite.case.law/sw3d/223/506/">id. at 510. It noted that nothing showed the nature or value of his services was out of the ordinary and no reasonable view of the evidence about those services supported "an estimated value even approaching $150,000 for the period before the verdict." Id. (emphasis added). In my view, the court reversed not because there was no evidence of actual monetary loss in the amount of $150,000, but because the evidence did not show the value of an ordinary nineteen-year-old's household services for a period of one year was anything close to $150,000.
Here, there were about five years between Carl's death and the jury's verdict. The jury determined that each daughter had past pecuniary loss of $50,000. This *665 number amounts to $10,000 per year per daughter. The jury determined that each daughter had future pecuniary loss of $100,000. Dividing this number by the fifteen years Carl would have been expected to live after the verdict, the jury's determination amounts to about $6,700 per daughter for each year of lost advice and counsel in the future. The jury determined that Vicki's past pecuniary loss was $200,000. This number amounts to $40,000 per year in past pecuniary loss. The jury determined that Vicki's future pecuniary loss was $400,000. This number amounts to about $26,700 for each year in the future in which she lost the care, maintenance, support, advice, and counsel of her husband. Here, viewing the evidence in the light most favorable to the verdict as we are required to do, the numbers are not so big as to be beyond what the jury could reasonably have estimated the value of those services to be. See City of Keller v. Wilson , 168 S.W.3d 802, 826-27 (Tex. 2005) (setting out well-known standards for reviewing sufficiency of evidence).
The majority distinguishes Christus Health , Samco , and John Deere , which do not require evidence of calculable financial contributions, by noting that they did not involve the exemplary damages cap and thus did not use the phrase "actual economic or pecuniary loss" found in chapter 41's definition of "economic damages." See CIV. PRAC. & REM. CODE § 41.001(5). But the jury charge in this case did not contain the phrase "actual economic or pecuniary loss" either. At the charge conference, Goodyear asked that the following language be added to the definition of pecuniary loss: "damages for pecuniary loss require certainty of actual monetary loss." The court denied the request, and Goodyear has not challenged that ruling on appeal. We measure the sufficiency of the evidence against the jury charge given. See Sw. Energy Prod. Co. v. Berry-Helfand , 491 S.W.3d 699, 713 (Tex. 2016) ; Boehringer v. Konkel , 404 S.W.3d 18, 26-27 (Tex. App.-Houston [1st Dist.] 2013, no pet.), disapproved of on other grounds by Ritchie v. Rupe , 443 S.W.3d 856 (Tex. 2014). The charge in no way limited the jury to awarding only actual out-of-pocket economic losses. The jury was asked to determine the amount of appellees' "pecuniary loss," which was defined as "the loss of care, maintenance, support, advice, counsel, and reasonable contributions of a pecuniary (monetary) value." These pecuniary losses are not subject to precise mathematical calculation, but I agree with appellees that "the inherent uncertainty in measuring these losses does not make them 'non-economic in nature.' " Nor does this inherent uncertainty mean the loss is not an actual pecuniary loss. I would uphold the jury's determination of pecuniary loss in this case and conclude the trial court correctly applied the cap on exemplary damages.
I would affirm the trial court's judgment.
SUPPLEMENTAL OPINION
Opinion by Justice Whitehill
In our opinion dated August 31, 2017, we suggested remittitur of $1,740,000 of the exemplary damages awarded to appellees Vicki Lynn Rogers, Natalie Rogers, and Courtney Dugat. We stated that if appellees filed the remittitur with fifteen days, we would modify the trial court's judgment to award appellees $1,150,000 in exemplary damages and affirm the judgment as modified.
On September 6, 2017, appellees filed their consent to the suggestion of remittitur. Accordingly, we vacate our judgment, but not our opinion, dated August 31, 2017, and modify the trial court's judgment to reflect the specified remittitur. The trial *666 court's judgment is modified to award appellees exemplary damages in the amount of $1,150,000, apportioned among appellees according to the jury's findings. We affirm the trial court's judgment as modified. This Court's opinion of August 31, 2017, otherwise remains in effect.

The case involved the version of section 41.001 in effect in 1995. Since 2003, when the legislature added a definition of noneconomic damages to section 41.001, "injury to reputation" has been specifically included in that definition. Civ. Prac. & Rem. Code § 41.001(12).

The jury also found the mother's future pecuniary loss damages were $50,000, and the defendant did not challenge that amount on appeal. See Excel Corp. , 223 S.W.3d at 508.